536

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* L. V. WASH-
INGTON, Defendant-Appellant.

(No. 60683;

First District (5th Division)—May 23, 1975.

James J. Doherty, Public Defender, of Chicago (Thomas F. Finegan,
Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Don-
ald M. Devlin, and John T. Theis, Assistant State's Attorneys, of coun-
sel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was charged by indictment with (a) the robbery[1] of Ruth
Lloyd (Count I), (b) the robbery of Tillman Lloyd (Count II) and
(c) burglary[2] (entry into the home of Ruth and Tillman Lloyd at 5618

---

[1] Section 18—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 18—1),
which provides:
  "(a) A person commits robbery when he takes property from the person
  or presence of another by the use of force or by threatening the imminent
  use of force."
[2] Section 19—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 19—1),
which provides:
  "(a) A person commits burglary when without authority he knowingly ·enters
  or without authority remains within a building, * * * with intent to
  commit therein a felony or theft."

South Aberdeen in Chicago "with the intent to commit therein theft") (Count III). Following a jury trial he was found guilty as charged. At the hearing in aggravation and mitigation the trial judge, stating that he thought that the two robbery counts "merged," imposed a single sentence of 6 years 8 months to 20 years on the robbery convictions to run concurrently with an identical 6 years 8 months to 20 years on the burglary conviction.

On appeal defendant contends: (1) Since there was only one robbery committed, the judgment entered on the second robbery count must be vacated; and (2) his conviction and sentence for burglary must be reversed since it arose out of the same course of conduct as the robbery conviction. Defendant does not contest the sufficiency of the evidence to prove him guilty of the robbery of Ruth Lloyd (Count I of the indictment).

The following evidence relevant to the issues raised on appeal was adduced at trial.

*Ruth Lloyd* testified for the State that at approximately 5 A.M. on February 6, 1972, she was awakened by the crying of her 22-month-old son whose crib was located in the bedroom of her and her husband. She took the boy down the hall toward the bathroom where she noticed that the light was on and the door closed. She also smelled cigarette smoke although no one in her family smoked. She asked who was in the bathroom but received no reply. As she spoke, however, the light "clicked" off. She returned to her bedroom and awakened her husband, telling him that someone was in the house. Within a few minutes a man appeared at the bedroom door wearing "a Russian type hat" and a handkerchief over part of his fact. The man said "this is a stickup," threatened her and her husband and told them to get back into bed. They refused to do as he ordered. As the man came further into the room, she managed to flee through the door and then run next door to alert her neighbor.

*Tillman Lloyd* testified for the State that he was awakened by his wife at approximately 5 A.M. on February 6, 1972. She told him that there was an intruder in the house. He wanted to investigate but she would not let him go. Within a few minutes a man wearing "a Russian type hat * * * and * * * a bandanna around his face" appeared in the doorway of their bedroom. The man was in his stocking feet and his hands were in his pockets as if he had a gun. Lloyd identified the man as defendant. Defendant told Lloyd and his wife that this is a holdup and they should keep quiet or they would be dead. Defendant then entered the room, "inched" toward the chest of drawers and took his wife's wallet. She, meanwhile, ran out of the room toward the front

of the house. Defendant turned toward their baby's crib, at which point Lloyd grabbed him around the shoulders and threw him to the floor. They scuffled in the bedroom, during which time the bandanna fell from defendant's face. Defendant fled into the kitchen where Lloyd saw he had left his shoes. Defendant hit Lloyd over the head with one of the shoes and then made his escape. Later that day the police asked Lloyd to view a lineup, at which he identified defendant.

Defendant chose not to testify on his own behalf.

## Opinion

The State in its brief concedes that only one robbery was committed by defendant. After reviewing the record, we agree and therefore hold that the judgment of conviction on Count II of the indictment alleging the robbery of Tillman Lloyd be vacated.

Defendant's chief contention is that his conviction and sentence for burglary (Count III of the indictment) must be reversed since it arose out of the same conduct as the robbery conviction. The State responds that the burglary conviction should not be reversed since the instant case "does not involve a single continuous transaction." Rather, it is asserted that defendant completed the burglary upon entering the Lloyd home and formed the intent to commit robbery only after he was discovered in the bathroom by Ruth Lloyd.

■■ A person may not be convicted of multiple offenses arising out of the same act or the same conduct. Only the judgment and sentence for the most serious of the offenses may stand. (*People v. Schlenger*, 13 Ill.2d 63, 147 N.E.2d 316; *People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1.) The most recent interpretation of the *Schlenger-Lilly* finding is found in *People v. Williams*, 60 Ill.2d 1, 322 N.E.2d 819. There the defendant and an accomplice gained entry into a dwelling and were confronted by the homeowner, one Joseph Calderone. A scuffle ensued in which Calderone was shot. The defendant then proceeded to threaten Calderone's wife with a gun and rob the premises. Among the contentions raised by the defendant was that it was improper for him to be convicted of both armed robbery and burglary. The court held at page 14 that:

> "* * * although burglary and armed robbery involve different elements of proof and the men committed a series of acts, their unauthorized entry with the intent to commit theft and the actual theft by means of armed robbery constitute two offenses arising from the same conduct involved in robbing the Calderones. Only the conviction of the most serious of the two offenses,

armed robbery, can stand, and the judgment and sentence on the burgary conviction must be reversed." (60 Ill.2d 1, 14.) Similarly, in the instant case, defendant's unauthorized entry with intent to commit theft, and the actual theft by means of robbery, constitute two offenses arising from the same conduct. However, in accordance with the *Williams* holding, only the conviction of the more serious of the two offenses, the robbery of Ruth Lloyd, can stand, and the judgment and sentence on the burglary conviction must be reversed. See also *People v. Johnson*, 25 Ill.App.3d 976, 323 N.E.2d 777; *People v. Johnson*, 28 Ill.App.3d 799.

For the foregoing reasons we (1) affirm defendant's conviction for the robbery of Ruth Lloyd (Count I), (2) vacate the judgment of conviction for the robbery of Tillman Lloyd (Count II) and (3) reverse the judgment of conviction and sentence for burglary (Count III).

Affirmed in part; reversed in part; vacated in part.

BARRETT, P. J., and LORENZ, J., concur.