THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES PHILYAW, Defendant-Appellant.

(No. 73-256; ▮▮▮▮▮▮▮▮

Second District (1st Division)—December 24, 1975.

Ralph Ruebner and Phyllis J. Perko, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz, of Illinois State's Attorneys Association, of counsel) for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

James Philyaw, the defendant, was convicted in a bench trial of theft under $150 (Ill. Rev. Stat. 1971, ch. 38, par. 16—1(d)(1)), and was sentenced to serve 30 days in the county jail. He appeals, contending that he was not proved guilty beyond a reasonable doubt and that the stereo tape cartridges found in his possession and shown to have been stolen were the proceeds of an illegal search. In a supplemental brief

defendant also contends that the information under which he is charged is void because it fails to allege that the property over which he had control was stolen "by another."

■■ Defendant's challenge to the information is based upon the appellate court decision in *People v. Dickerson*, 21 Ill.App.3d 977 (1974). *Dickerson*, however, was reversed on appeal in *People v. Dickerson*, 61 Ill.2d 580 (1975). The Supreme Court held that subsection 16—1(d), which it found to be stated in the disjunctive, establishes two separate theories of theft; and that under the second theory the legislature chose not to include the words "by another" so that it was not necessary for the State to go beyond the mere statutory language in framing the charge. Here defendant was properly charged with committing theft by knowingly obtaining control over stolen property under such circumstances as would reasonably induce him to believe that the property was stolen.

We also conclude that the motion to suppress was properly denied. In the course of a burglary investigation by two Winthrop Harbor police officer's, defendant's automobile was driven to the police station with defendant's consent. A warrant was issued by a judge to search the car on the basis of one of the officer's complaint and affidavit. The complaint in substance alleged that certain specifically described items from the Winthrop Harbor Village Garage including various tools and quantities of motor oil and STP motor treatment fluid were found in the car. It was further recited that

> "\* \* \* such information is based upon your affiant's reasonable and probable information and belief based upon his interrogation and investigation specifically but not limited to the observation of the above-described motor vehicle at the hour of 2:15 a.m. at a location of approximately 130 feet from the burglarized premises. Further investigation revealed that more than one set of footprints clearly visible, lead from the burglarized premises to the exact point at which the above-described vehicle was observed at the hour of 2:15 a.m. And further your affiant did stop the above-described motor vehicle at approximately 5:00 a.m. at which time he observed a light colored gray tool box in the trunk of the vehicle and a can of STP motor treatment fluid on the floor of the rear seat in the vehicle \* \* \*."

■■ Defendant has argued that the complaint and affidavit are insufficient because the affiant failed to reveal whether it was he or someone else who identified defendant's auto at the scene of the burglary and, if the car was identified by someone else, it failed to set forth why this

hearsay information should be accepted and why the third party should be deemed credible. In support of these contentions defendant cited *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964), and *United States v. Harris*, 403 U.S. 573, 29 L.Ed.2d 723, 91 S.Ct. 2075 (1971). Under the circumstances these cases are not helpful. Although the affiant uses the word "interrogation" in describing the source of his information he continued to explain that his information was also based upon his "investigation" which included his personal observation of the defendant's vehicle in close proximity to the scene of the burglary and his later observation of an item identical to one of the items taken in the burglary which he saw on the rear floor of defendant's vehicle. Affidavits for search warrants are to be tested by issuing judges in a common sense and realistic fashion. (See *United States v. Ventresca*, 380 U.S. 102, 13 L.Ed.2d 684, 85 S.Ct. 741, 746 (1965). See also *People v. Thomas*, 62 Ill.2d 375 (1975).) Here the issuing judge could properly hold that the complaint for the search warrant set forth the necessary factual statements to establish probable cause and he could have determined that the observation stated in the complaint was that of the police officer who was the affiant.

■■ Defendant's further contention that the affidavit does not sufficiently show the connection between defendant's automobile and the alleged burglary because it does not set forth the date or time of the burglary is also without merit. Again a common sense reading of the complaint and affidavit supports the conclusion that the burglary occurred at a time reasonably close to the time defendant's car was sighted. The failure to state when the burglary occurred is not a substantial defect under the circumstances. See *People v. Hammond*, 18 Ill.App.3d 693, 698 (1974).

■■ Defendant has also contended that, even assuming the validity of the warrant, the stereo tapes were illegally seized because they were not listed in the warrant nor mentioned in the complaint. We agree, however, with the answer of the State that the tapes were inadvertently discovered in plain view in the course of the warrant to search for specified objects of the burglary. Where a police officer has prior justification for a search in the course of which he inadvertently discovers items which are apparent to the officer as evidence of other crimes he may seize the inadvertently discovered evidence. See *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971); *United States v. Gray*, 484 F.2d 352, 355 (6th Cir. 1973).

Here the police had prior justification for the search as evidenced by the warrant. Since the officers had the right to lift the seat and look into

the boxes for the articles listed in the warrant, the tapes came into the officers' plain view. (See *People v. Hester*, 22 Ill.App.3d 118, 120, 121 (1974); *People v. Myles*, 2 Ill.App.3d 955, 959-61 (1971).) In addition, as one of the officers testified in the course of the motion to suppress, he had no idea that he would find the tapes in defendant's car. Thus, the discovery was inadvertent. Also, one of the officers testified that upon seeing the names "Walton" and "Booth" written on the tapes he remembered that these names corresponded with the recently filed complaints concerning stolen tapes, thus recognizing the tapes to be evidence.

Defendant's argument that he was not proved guilty beyond a reasonable doubt is essentially based on his claim that the State did not prove defendant's knowledge that he controlled stolen property. He contends that the evidence is sufficient to raise a reasonable doubt based on his explanation that he bought used tapes and paid a reasonable price for them and that he did not notice the personal identification on them.

■■ There was evidence that the tapes stolen from Booth and Walton were found in defendant's car; some were found in a metal box and in a partial 12-pack of beer under the back seat cushion, while others were found in the trunk, on the front and rear seats, on the front floor of the driver side and behind the back of the rear seat. Many of the cartridges either had the names of "Walton" or "Booth" written on them in indelible ink with letters one-quarter to one-half inches in height.

Defendant testified that he obtained the tapes on the previous Saturday evening when he was having dinner at a drive-in restaurant in Zion. He said that while he was sitting in his car in the parking lot he was approached by one Terry Swanson who asked him if he would like to purchase some stereo tapes. Swanson showed him a number of tapes contained in a brown paper grocery bag. They agreed on a price of $1.50 for some of the tapes and $2.00 for others. Defendant said he knew Swanson from high school but that they were not friends and he did not know if Swanson had a criminal record or had been involved in previous thefts. Defendant also stated that he had bought used tapes on three or four previous occasions for his car and that $2.00 per tape was the going rate. He said that he did not see the names "Walton" or "Booth" on the tapes and he did not think the tapes were stolen.

Guilty knowledge may be inferred from all of the facts and circumstances which would induce belief in the mind of a reasonable person that the property was stolen and which would be sufficient to induce in the mind of the accused a like belief. (*People v. Mowry*, 6 Ill.2d 132, 136-7 (1955).) The receipt of the property by the accused without inquiry as to its source or the title from whom it was received may estab-

lish the necessary guilty knowledge. See *People v. La Valley*, 7 Ill.App.3d 1051, 1054 (1972). Compare *People v. Berg*, 91 Ill.App.2d 166 (1968), which we find distinguishable on its facts.

■■ The judge as the trier of facts could believe part of defendant's testimony while rejecting other parts. (See *People v. Holverson*, 32 Ill. App.3d 459, 336 N.E.2d 88, 89 (1975).) He could give credence to the defendant's testimony that he purchased the tapes at night in a restaurant parking lot from a casual acquaintance. The judge could similarly refuse to give credence to defendant's further testimony that he did not see the names identifying the tapes, which were not those of the seller. The judge could thereby conclude from all of the facts that the defendant possessed guilty knowledge beyond a reasonable doubt.

We therefor affirm the judgment.

Affirmed.

GUILD and HALLETT, JJ., concur.