THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
ROBERT TAYLOR, Defendant-Appellee.
Third District   No. 3—89—0666

Opinion filed November 16, 1990.

STOUDER, J., dissenting.

Larry VanDerSnick, State's Attorney, of Cambridge (Judith Z. Kelly and
John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of
counsel), for the People.

Eugene L. Stockton, of Kewanee, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Defendant Robert Taylor was charged by information in Henry County, Illinois, with three counts of theft. Count I alleged the felony theft of a 460-cubic-inch Ford motor having a value in excess of $300. The circuit court of Henry County granted defendant's motion to suppress the motor, which was seized in defendant's garage during a search of the premises where he resided. The State has appealed from the order suppressing the evidence.

The record discloses that the search warrant issued by the circuit court of Henry County authorized Kewanee police officers to search "the premises of Robert Taylor and his vehicle located at 106 South State St., Annawan, Illinois, said vehicle being a yellow Chevrolet Celebrity station wagon." The warrant also authorized seizure of a Panasonic video cassette recorder (VCR) with a specific serial number and Pioneer stereo speakers with specific serial numbers and initials scratched into them. Late in the afternoon of May 25, 1989, Kewanee police arrived at the home of defendant and presented the search warrant to defendant's wife, Dianna.

Dianna Taylor told the police officers that the VCR was in the living room and that the speakers were in defendant's car, which he had at work. Police officers entered the home, and Dianna told them to look "wherever they wanted." A VCR was seized from the living room, but the serial number had been scratched off so the police could not positively identify it as the one named in the warrant. The police continued to search defendant's home for the speakers and VCR. In the basement, officers located tools which they believed to be stolen, and in the unattached garage, officers saw in plain view a blue Ford motor which matched the description of a motor that had been reported stolen. The police seized the motor, tools, and some other items.

In defendant's motion to suppress, he alleged that the Ford motor was not named in the search warrant and was seized from an unattached garage which also was not named in the the search warrant. Following a hearing on the motion, the trial court allowed defendant's motion without giving any reason for the ruling. None of the other items seized are involved here.

The issue on appeal, as framed by the parties, is whether the trial court properly suppressed the evidence on the grounds that the search had taken on the characteristics of an illegal general search. Defendant argued in the trial court that the search of the garage ex-

ceeded the scope of the warrant and that the incriminating nature of the motor was not readily apparent.

■■ ■ The warrant in this case authorized a search for stereo speakers and a VCR in the automobile and premises belonging to defendant. The warrant was not limited to defendant's home or residence, but specifically stated "premises," a word which has been construed to include all buildings at the address listed (*United States v. Williams* (9th Cir. 1982), 687 F.2d 290), including a detached garage (*United States v. Bonner* (1st Cir. 1986), 808 F.2d 864). Thus, the extension of the search to defendant's garage was within the location specified in the warrant. Furthermore, the garage was a reasonable place to look for automobile stereo speakers. Certainly the police officers were not required to accept as true the statement by defendant's wife that the speakers were in his car at work.

■■ The rule was succinctly stated in *People v. Philyaw* (1975), 34 Ill. App. 3d 616, 619, 339 N.E.2d 461, 464:

> "Where a police officer has prior justification for a search in the course of which he inadvertently discovers items which are apparent to the officer as evidence of other crimes he may seize the inadvertently discovered evidence."

Here the search was conducted pursuant to a valid search warrant, and the officers were justified in looking into the garage. The blue Ford motor was plainly visible in the garage and was inadvertently discovered. One officer recognized the motor as matching the description of a 460-cubic-inch blue Ford motor that had been stolen. The seizure of the motor was proper.

■■ Defendant argues that the search through tool boxes in the basement and the seizure of tools, a lawn mower, and other items all served to invalidate the police search of his premises under the ruling of *People v. Harmon* (1980), 90 Ill. App. 3d 753, 413 N.E.2d 467. In the *Harmon* case, the search warrant authorized a search for certain large items of railroad property. The police found some shovels and forks in the defendant's living room near the television. Upon moving the television set, the police saw cords dangling from the back of the set, and after removing the back, they discovered several CB radios inside. The court suppressed the evidence seized on the ground that the police searched every nook and cranny of the home upon the pretext of searching for some large items of railroad property which could not have been hidden in some of the places searched. The court stated that the scope and intensity of the search are determined by the warrant, and a search beyond the scope of the warrant is a general search which invalidates the seizure of evidence.

*Harmon* is easily distinguished from the case before us. There the police admitted that the items listed in the warrant were not small enough to fit in back of the television set. The court found that it was not readily apparent that the CB radios found in the television set were evidence of a crime since defendant was a junk dealer and used his home for storage of his inventory. In the case before us, to the contrary, the discovery of the motor did not involve looking in places where the VCR and stereo speakers could not have been hidden. While looking into the garage, the police saw a blue Ford motor in plain view which, upon closer examination, matched the description of a motor reported stolen in Kewanee. The discovery and seizure of the motor was not the result of an improper general search, and the evidence so seized should not have been suppressed.

We reverse the order of the circuit court of Henry County and remand this cause for further proceedings.

Reversed and remanded.

HEIPLE, P.J., concurs.

JUSTICE STOUDER, dissenting:
In this case, the State contends the warrantless seizure of the engine was justified by the plain view doctrine. In view of the record in this case, I do not find the requirements for invoking the doctrine satisfied and therefore I dissent.

In *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, the United States Supreme Court stated that under certain circumstances the warrantless seizure of an item that comes within plain view during an otherwise lawful search of a private area may be reasonable under the fourth amendment. One such circumstance cited in Justice Stewart's opinion in *Coolidge* is "the situation in which the police have a warrant to search a given area for specific objects, and in the course of the search come across some other article of incriminating character." 403 U.S. at 465, 29 L. Ed. 2d at 582, 91 S. Ct. at 2037.

Recently, in *Horton v. California* (1990), 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301, the Court clarified the requirements for application of the plain view doctrine. In *Horton*, the police obtained a warrant which authorized them to search the defendant's residence for the proceeds of an armed robbery. However, the affidavit for the search warrant referred to police reports that described the weapons used in the armed robbery as well as the proceeds. In conducting the

search, the investigating officer discovered the weapons in plain view and seized them. In affirming the trial court's denial of defendant's motion to suppress, the Court held that inadvertent discovery of the evidence is not a necessary condition for a plain view seizure. In the course of its discussion, the majority stated: "It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be 'immediately apparent.' [Citations.] *** Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Horton v. California* (1990), 496 U.S. 128, 136-37, 110 L. Ed. 2d 112, 123, 110 S. Ct. 2301, 2308.

In *Arizona v. Hicks* (1987), 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149, bullets were fired through an apartment floor. When the police arrived, they entered the apartment and seized three weapons. One officer noticed expensive stereo equipment, which he suspected was stolen. He moved some of the stereo components, including a turntable, in order to read and record the serial numbers on the equipment. The officer called his headquarters and was advised that the turntable had been reported stolen. He immediately seized the turntable. The State attempted to justify the officer's actions under the plain view doctrine. The Supreme Court affirmed the trial court's suppression of the evidence finding that moving and turning the equipment constituted a search requiring probable cause. The Court further held that probable cause is required to invoke the plain view doctrine. The Court stated, "A dwelling-place search, no less than a dwelling-place seizure, requires probable cause, and there is no reason in theory or practicality why application of the plain-view doctrine would supplant that requirement." *Arizona v. Hicks* (1987), 480 U.S. 321, 328, 94 L. Ed. 2d 347, 356, 107 S. Ct. 1149, 1154.

In the instant case, the police had a warrant to search the defendant's "premises" and automobile. They were authorized by the warrant to seize a Panasonic VCR bearing a specified serial number and Pioneer stereo speakers. They located a Panasonic VCR in the living room. However, the serial number on the VCR had been "scraped off." The police continued the search for the speakers and for any additional Panasonic VCRs. During this search, Detective Rod Huber noticed the engine in the unattached garage. Officer Cervantez testi-

fied that when he first saw the engine, he could only determine that it was blue. He did not know the make or displacement of the engine. He testified that one of the other officers identified it as a Ford. The officers believed the engine was one which had been reported stolen. The police seized the engine along with other items.

There was nothing unique about this blue engine in and of itself which would make its incriminating character immediately apparent. In fact the record indicates the officers allowed a citizen to come to the house to look at the engine to determine if it was the same engine the citizen had reported stolen. This demonstrates that it was not immediately apparent to the officers that the engine was stolen. The majority's opinion gives no analysis of whether the immediately apparent condition for invoking the plain view doctrine was satisfied. The majority simply states: "The blue Ford motor was plainly visible in the garage and was inadvertently discovered. One officer recognized the motor as matching the description of a 460-cubic-inch blue Ford motor that had been stolen. The seizure of the motor was proper." 205 Ill. App. 3d at 448.

In addition, the record is unclear as to how the officers determined the displacement of the engine. The majority states that "the police saw a blue Ford motor which, upon closer examination, matched the description of a motor reported stolen ***." (205 Ill. App. 3d at 449.) If they moved or turned the engine in making their "closer examination," that constitutes a search under *Hicks* requiring probable cause. The State in its brief simply states that the officers "reasonably believed" the engine was stolen. However, probable cause is required in order to search or seize an item under the plain view doctrine.

I find the majority's attempt to distinguish *People v. Harmon* (1980), 90 Ill. App. 3d 753, 413 N.E.2d 467, unpersuasive. The majority's analysis confuses the issue of whether the officers were lawfully looking in a place large enough to hold the VCR or speakers with the issue of whether it was immediately apparent that the engine was contraband. The result in *Harmon* is consistent with *Horton* and *Hicks*. The majority in *Harmon* found that it was not apparent that the CB radio did not belong to the defendant. The rules pronounced in *Horton* and *Hicks* applied to the facts in *Harmon* would result in the same outcome. In fact, the result is consistent with *Coolidge*, which predates *Harmon* and upon which *Horton* and *Hicks* are based.

In sum, the seizure of the engine cannot be justified by reliance on the plain view doctrine and I would affirm.